01

02

03

04                          UNITED STATES DISTRICT COURT
                           WESTERN DISTRICT OF WASHINGTON
05                                    AT SEATTLE

06  ANDRIAN SHERMAN,                    )    CASE NO. C07-0778-MJP
                                        )
07           Plaintiff,                 )
                                        )
08      v.                              )
                                        )    REPORT AND RECOMMENDATION
09  PATRICK BARNES, et al.,             )
                                        )
10           Defendants.                )
    _____ )

11

12                                  INTRODUCTION

13          Plaintiff, proceeding *pro se* and *in forma pauperis*, has filed an action pursuant to 42

14  U.S.C. § 1983.  He alleges that while he was incarcerated at the Monroe Correctional Complex

15  in Monroe, Washington, he received inadequate medical care, in violation of the Eighth

16  Amendment to the Constitution.  Plaintiff and defendants have filed  motions for summary

17  judgment.  Having considered the briefs, declarations, and exhibits submitted by the parties, the

18  Court concludes that plaintiff's motion for summary judgment should be denied and defendants'

19  motion for summary judgment should be granted.

20                                  BACKGROUND

21          The declarations submitted by defendants in support of their motion for summary judgment

22  establish the following facts, which, except as noted below, are uncontroverted by plaintiff:

REPORT AND RECOMMENDATION
PAGE -1

01          Plaintiff was incarcerated at the Monroe Correctional Complex ("MCC") on June 8, 2005,

02   when he had surgery to remove four wisdom teeth.  (Dkt. No. 35, Ex. 2, Attachment A).  After

03   surgery, plaintiff was prescribed pain killer and was discharged.  (*Id.*)  On June 12, 2008, plaintiff

04   complained of swelling, infection, and not having been given antibiotics following his surgery.

05   (*Id.*, Ex. 3 at 1).  Susan Williams, a registered nurse at MCC, examined plaintiff and observed that

06   the right side of his face and neck were swollen.  (*Id.*)  Before she could finish her exam, however,

07   plaintiff apparently got angry and left.  (*Id.* at 2).

08          Four hours later, plaintiff returned and Nurse Williams finished her exam.  She looked in

09   plaintiff's mouth and saw no signs of infection.  (*Id.*)  She also called in a physician's assistant,

10   Patrick Barnes, to confer about plaintiff's status.  (*Id.*)  She advised Barnes of plaintiff's vital

11   signs, which were within normal limits.  Barnes advised plaintiff to continue using the pain

12   medications and to use ice packs if necessary to reduce swelling.  (*Id.*, Ex. 4 at 2).  Barnes further

13   advised plaintiff to return the next morning if pain persisted.

14          That same day, plaintiff submitted an emergency grievance to a corrections officer, Lt.

15   Richard Samp.  (*Id.*, Ex. 8).  Lt. Samp contacted Nurse Williams, who informed him that plaintiff

16   had been seen that day and was not in medical danger.  Lt. Samp then referred the grievance to

17   the grievance coordinator to be processed as a routine matter.  (*Id.*)

18          The next morning, plaintiff was admitted to the inpatient unit of MCC, with a diagnosis

19   of "dry socket," an apparently common condition following tooth extraction.  (*Id.*, Ex. 4 at 2).

20   Plaintiff was administered antibiotics intravenously.  (*Id.*, Ex. 4 at 2).  After three days, plaintiff

21   was switched to oral antibiotics.  (*Id.*)  The pain returned, and plaintiff was again placed on I.V.

22   antibiotics.  (*Id.*)

REPORT AND RECOMMENDATION
PAGE -2

01    During this time, plaintiff filed another emergency grievance with Lt. James Asin, a

02  corrections officer at MCC.  (*Id.*, Ex. 6).  Lt. Asin contacted medical staff and ascertained that

03  plaintiff was receiving medical care.  Lt. Asin then referred the matter to the grievance coordinator

04  to be processed as a routine matter.  (*Id.*)

05    On June 18, 2005, plaintiff was sent to Harborview Medical Center to be examined for a

06  possible abscess.  (*Id.*, Ex. 2, Attachment C).  Plaintiff was diagnosed with a right submandibular

07  abscess which was drained.  (*Id.*)  Plaintiff returned to the inpatient clinic at MCC on June 22,

08  2005.  (*Id.*, Ex. 2, Attachment A).  He requested to be discharged and was returned to the general

09  population on June 28, 2005.  (*Id.*)

10    In his own declaration, which is the only substantive statement by a witness that supports

11  plaintiff's motion for summary judgment,[1] plaintiff does not dispute the basic chronology of the

12  treatment described above.  However, plaintiff's account differs in that he adds to these facts in

13  several ways:  Overall, plaintiff describes the medical staff at MCC as being unsympathetic to his

14  condition and skeptical about the veracity of his complaints.  In particular, plaintiff states that

15  despite having been told by the doctor who removed his wisdom teeth that antibiotics would be

16  waiting for him back at the prison, none were.  (Dkt. No. 24 at 4).  Plaintiff further states that

17  physician's assistant Barnes told him that the reason his face was swollen was that the faces of

18  African Americans tended to swell up more than the faces of other races, and African American

19

20    [1] Plaintiff attaches to his declaration a brief statement by an inmate named John Coleman,
21  who states that he (Coleman) received antibiotics after surgery.  (Dkt. No. 24, Ex. A).  However,
    the relevance of this statement is questionable, since it does not describe the circumstances under
    which Coleman received antibiotics.  The Court also notes that the statement was not made under
22  penalty of perjury.

REPORT AND RECOMMENDATION
PAGE -3

01  bones healed more slowly.  (*Id*.)  Barnes denies having made any comments related to race.  (Dkt.

02  No. 35, Ex. 4 at 2).

03        In addition, plaintiff states that once he was given antibiotics intravenously at MCC, the

04  dosage was insufficient.  (Dkt. No. 24 at 7-8).  He also states that before arriving at Harborview,

05  he was taken to a clinic named "Valleyview," where he was told by a doctor that due to the "delay

06  in seeking treatment" and the "advanced form of infection," plaintiff would die if he were not

07  transported to Harborview.  (*Id*. at 9).  Plaintiff states that once he arrived at Harborview and was

08  examined by doctors, he was told that if he had waited one more day, he would have died.  (*Id*.)

09  Plaintiff further states that the doctors at Harborview also told him that "his chances to survive

10  the actual anesthesia and the surgery was very slim."  (*Id*. at 9-10).  Plaintiff chose to undergo the

11  surgery, even though he did so "through anguish and tears."  (*Id*. at 10).

12        Finally, plaintiff states that he has needed two additional surgeries since the operation at

13  Harborview "to correct the effects of the Monroe medical staff's refusal to provide some form of

14  post-surgical care for the plaintiff."  (*Id*. at 11).  Plaintiff states that he "continues to suffer to this

15  day by way of peirceing [sic] pain in his throat and jaw if he opens his mouth too wide."  (*Id*. at

16  13).

17        On June 5, 2007, plaintiff filed the instant complaint pursuant to 42 U.S.C. §1983.  (Dkt.

18  No. 6).  The Court dismissed three defendants and directed the Clerk to serve the complaint on

19  the remaining defendants. (Dkt. No. 7).  Defendants filed their answer on August 22, 2007.  (Dkt.

20  No. 18).

21        The Court issued an Order on August 27, 2007, setting deadlines for discovery and

22  dispositive motions. (Dkt. No. 19).  The cut-off date for discovery was November 1, 2007; the

REPORT AND RECOMMENDATION
PAGE -4

01 cut-off for dispositive motions was December 1, 2007. (*Id*. at 1).  On September 19, 2007, before

02 the close of discovery, plaintiff filed a motion for summary judgment.  (Dkt. No. 22).  Defendants

03 filed their own motion for summary judgment on November 30, 2007.  (Dkt. No. 35).  Both

04 motions were subsequently noted for consideration by the Court on December 28, 2007.  (Dkt.

05 No. 36).

06        On December 26, 2007, plaintiff filed a motion for an extension of time to conduct further

07 discovery and to file a response to defendants' motion.  (Dkt. No. 37).  The Court denied this

08 eleventh-hour motion as being inconsistent with the deadlines previously established by the Court

09 and also not stating good cause for the extension.  (Dkt. No. 39).  The summary judgment motions

10 are now ready for review.

11                                              <u>DISCUSSION</u>

12        Summary judgment is proper only where "the pleadings, depositions, answers to

13 interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

14 genuine issue as to any material fact and that the moving party is entitled to judgment as a matter

15 of law."  Fed. R. Civ. P. 56(c);*Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247 (1986).  The

16 court must draw all reasonable inferences in favor of the non-moving party.        *See F.D.I.C. v.*

17 *O'Melveny & Meyers*, 969 F.2d 744, 747 (9th Cir. 1992), *rev'd on other grounds,* 512 U.S. 79

18 (1994).  The moving party has the burden of demonstrating the absence of a genuine issue of

19 material fact for trial.  *See Anderson*, 477 U.S. at 257.  Mere disagreement, or the bald assertion

20 that a genuine issue of material fact exists, no longer precludes the use of summary judgment.  *See*

21 *California Architectural Bldg. Prods., Inc., v. Franciscan Ceramics, Inc*., 818 F.2d 1466, 1468

22 (9th Cir. 1987).  In addition, "[w]hen the nonmoving party relies only on its own affidavits to

REPORT AND RECOMMENDATION
PAGE -5

01  oppose summary judgment, it cannot rely on conclusory allegations unsupported by factual data

02  to create an issue of material fact." *Hansen v. United States*, 7 F.3d 137, 138 (9th Cir. 1993).

03  Plaintiff's claim of inadequate medical care is governed by the Supreme Court's decisions

04  interpreting the Eighth Amendment in the prison context.  These cases establish that denial of

05  medical attention to prisoners constitutes an Eighth Amendment violation only if the denial

06  amounts to *deliberate indifference* to serious medical needs of the prisoners.  *See Toussaint v.*

07  *McCarthy*, 801 F.2d 1080, 1111 (9th Cir. 1986) (emphasis added).  In *Farmer v. Brennan,* 511

08  U.S. 825 (1994), the Supreme Court defined a strict standard which a prisoner must meet in order

09  to establish "deliberate indifference."  Mere differences of opinion, negligence or even recklessness

10  concerning the appropriate treatment is insufficient.  511 U.S at 835-37.  Rather, a prison official

11  is liable only if he knows that plaintiff faces "a substantial risk of serious harm and disregards that

12  risk by failing to take reasonable measures to abate it."  *Id.* at 847.  In general, expert opinion is

13  necessary to establish a claim of deliberate indifference.  *See Hutchinson v. United States,* 838

14  F.2d 390 (9th Cir. 1988)

15  Here, plaintiff simply has not shown that a triable issue of fact exists that would hold

16  defendants liable under this standard.  Defendants have submitted uncontroverted evidence that

17  plaintiff received medical attention during and following the removal of his wisdom teeth.  It is,

18  of course, regrettable that plaintiff's mouth became infected after the surgery, and the Court does

19  not doubt that this infection caused plaintiff much discomfort.  However, the record clearly shows

20  that plaintiff was treated for this infection by medical staff at MCC and Harborview.  Even if the

21  Court were to accept plaintiff's statements that he had to demand this treatment, or that it was

22  given grudgingly by prison staff, such conduct would not rise to the level of a constitutional

REPORT AND RECOMMENDATION
PAGE -6

01  violation. *See Oltarzewski v. Ruggiero*, 830 F.2d 136, 139 (9th Cir. 1987) (verbal harassment

02  alone does not rise to the level of a constitutional violation); *cf. Farmer*, 511 U.S. at 832 ("The

03  Constitution does not mandate comfortable prisons.")

04       Therefore, the Court concludes that plaintiff has not satisfied his burden of showing that

05  a genuine issue of material fact exists regarding his claim that defendants provided inadequate

06  medical care. Plaintiff's additional claims that various defendants failed to properly respond to his

07  grievances are premised upon an initial finding of inadequate medical care. Because plaintiff fails

08  to meet his burden regarding this initial finding, his remaining claims also fail. Accordingly, the

09  Court recommends that plaintiff's motion for summary judgment be denied and that defendants'

10  motion for summary judgment be granted.

11                              CONCLUSION

12       For the foregoing reasons, the Court recommends that plaintiff's motion for summary

13  judgment be denied, that defendants's motion for summary judgment be granted and that this

14  action be dismissed with prejudice. A proposed Order accompanies this Report and

15  Recommendation.

16       DATED this 14th day of January, 2008.

17

18                    Mary Alice Theiler
                     United States Magistrate Judge

19

20

21

22

REPORT AND RECOMMENDATION
PAGE -7